IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARCUS BELL,                          )
                                      )
            Plaintiff,                )
v.                                    )       CASE NO. 2:09-CV-1082-WKW [WO]
                                      )
ELTON DEAN, *et al.*,                 )
                                      )
            Defendants.               )

## MEMORANDUM OPINION AND ORDER

Plaintiff Marcus Bell, a former employee of Alabama State University ("ASU"), brings this suit against the Trustees, President, and Executive Vice President of ASU, in their official and individual capacities, under the whistleblower anti-retaliation provision of the False Claims Act.  (Doc. # 1); *see* 31 U.S.C. § 3730(h).  Before the court is Defendants' motion to dismiss (Doc. # 13), which has been fully briefed.  (Docs. # 18, 19, 22, 24.)  The motion to dismiss is due to be granted in part, and construed as a motion for a more definite statement and as such granted in part.  The court will also order additional briefing on one legal aspect of the claim.

### I.  FACTS

The Complaint alleges that Mr. Bell was employed by ASU as its Director of Title III Programs.[1]  In that position, Mr. Bell "was responsible for applying for, receiving,

---

[1] "Title III Programs" refers to grants administered by the U.S. Department of Education under Title III of the Higher Education Act of 1965, as amended, codified at 20 U.S.C. §§ 1051 *et seq.*  As relevant here, the grants are available to Historically Black Colleges and Universities.  *See Fort Valley State Coll. v. Bennett*, 853 F.2d 862, 863 (11th Cir. 1988).

appropriating, and accounting for all Title III funds awarded to ASU." (Doc. # 1, ¶ 8.)  Such grants identify the specific uses for which funds are authorized, which makes them "restricted funds."  Defendants nonetheless "expressed a desire to use Title III funds in a manner not authorized by Title III."[2]  (Doc. # 1, ¶¶ 12-13.)  Mr. Bell told Defendants that such use was unauthorized, and that he would report any such inappropriate uses of funds to the Secretary of Education and request an audit.  As a result, Defendant William Harris, President of ASU, recommended to the Defendant Trustees that Mr. Bell be fired, and the Trustees terminated Mr. Bell effective September 30, 2009.  (Doc. # 1, ¶¶ 14-15.)

The Complaint consists of a single count, asserting that Mr. Bell was terminated in retaliation for his threat to report the planned unlawful use of funds, in violation of the whistleblower protection provision of the False Claims Act, 31 U.S.C. § 3730(h).  Mr. Bell seeks reinstatement, back pay, and compensation for costs and attorneys' fees.  (Doc. # 1, at 6.)

## II.  STANDARD OF REVIEW

When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must "take the facts alleged in the complaint as true and construe them in the light most favorable to" the plaintiff.  *Danley v. Allen*, 540 F.3d 1298, 1304 (11th Cir. 2008).  "[D]etailed factual allegations" are not required, but something "more than labels and conclusions, and a

---

[2] In the introduction to the Complaint, Mr. Bell expresses the sequence of events in a slightly different way, alleging that he "was instructed by Defendants . . . to apply some of these Title III funds for purposes other than for which such funds were appropriated."  (Doc. # 1, ¶ 2.)  This discrepancy will be further addressed below.

formulaic recitation of the elements of a cause of action" is necessary.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

### III.  DISCUSSION

Although there are only one Count in the Complaint, Defendants make multiple arguments favoring dismissal.  In their motion to dismiss (Docs. # 13, 14), they argue that Mr. Bell's official-capacity claims against Defendants are not cognizable because official-capacity claims are to be treated as claims against the state itself, and states are not "persons" for purposes of the False Claims Act.  *See Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765 (2000).  Second, Defendants argue that they are entitled to qualified immunity for claims made against them in their personal capacities.  Third, they argue that Mr. Bell's Complaint fails to state claims upon which relief may be granted, and should be dismissed pursuant to Federal Rule of Civil Procedure 8; they further submit that the claim is one for "fraud," and must be pled under the heightened standard of Rule 9(b).  For the first time in their reply brief (Doc. # 19), Defendants argue that, because they are state employees, the official-capacity claims for money damages are barred by the doctrine of state sovereign immunity.[3]

---

[3] While the parties refer to the issue as whether Defendants are entitled to immunity under the Eleventh Amendment to the U.S. Constitution, the doctrine of state sovereign immunity exists as a

Ordinarily, the court would not consider an argument made for the first time in a reply brief. But Defendants correctly suggest that state sovereign immunity implicates the court's subject-matter jurisdiction, and must be decided regardless of when it is raised. Fed. R. Civ. P. 12(h)(3); *Seaborn v. Fla. Dep't of Corr.*, 143 F.3d 1405, 1407 (11th Cir. 1998) ("An assertion of Eleventh Amendment immunity essentially challenges a court's subject matter jurisdiction."). Also in *Seaborn*, the Eleventh Circuit explicitly rejected the former doctrine of "hypothetical jurisdiction," which permitted resolution of claims on their merits when the outcome would favor the party asserting sovereign immunity, and the inquiry as to sovereign immunity was more complex than the inquiry on the merits. 143 F.3d at 1407 n.2 (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998)); *see also Calderon v. Ashmus*, 523 U.S. 740, 745 n.2 (1998).

Accordingly, the court must begin by determining whether state sovereign immunity bars the official-capacity claims for money damages. Concluding that it does, the claims for official-capacity injunctive relief and individual-capacity relief remain. Because of the lack of clarity in both the Complaint and, to some degree, in the underlying law, the court will require a more definite statement and further briefing from the parties on these aspects of the claim.

---

distinct, albeit related, concept. *See generally Alden v. Maine*, 527 U.S. 706, 713 (1999) ("[T]he sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment."); *Hans v. Louisiana*, 134 U.S. 1 (1890). The barrier to the official-capacity money damages claims is not found in the text of the Eleventh Amendment, but rather is the broader doctrine of state sovereign immunity. *See* U.S. Const. amend.XI.

### A.  Official-Capacity Claims for Money Damages

According to Defendants, the official-capacity claims must be dismissed because they are barred by state sovereign immunity.  (Doc. # 14, at 1-2; Doc. # 19, at 2-5.)  As an initial matter, the court agrees with Mr. Bell that state sovereign immunity alone would not bar his claim for injunctive relief, as it is clear that "'official-capacity actions for prospective relief are not treated as actions against the State,'" and that official-capacity claims are the appropriate way to obtain injunctive relief such as reinstatement.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989) (quoting *Kentucky v. Graham*, 473 U.S. 159, 167, n.14 (1985)).  The court disagrees, however, with Mr. Bell's suggestion that the court "leave for another day" whether Defendants may also be sued in their official capacities for money damages.  The court has an obligation to promptly examine any issue which goes to its own subject-matter jurisdiction.

 Defendants rely initially on the Supreme Court's decision in *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765 (2000).  *Stevens* was not decided on the basis of state sovereign immunity.  Rather, the court explicitly avoided the "difficult constitutional question[]" whether "an action in federal court by a *qui tam* relator against a State would run afoul of the Eleventh Amendment."[4]  *Id*. at 787.  It decided the case instead on the textual question about the meaning of the word "person."

---

[4]  As explained below, the question here is probably a less "difficult" one, because this is not a *qui tam* action in which Mr. Bell is suing in the name of the United States, the issue which appeared to concern the Supreme Court in *Stevens*.  Rather, he is the plaintiff in his name alone.

In *Stevens*, the Court held that a state cannot be sued under Section 3729(a), because that section "subjects to liability '[a]ny person'" who causes a fraudulent claim to be presented to the United States.  *Id.* at 780 (quoting 31 U.S.C. § 3729(a)).  Applying a "longstanding interpretive presumption," the Court held that the word "'person' does not include the sovereign."  *Id.*  While *Stevens* emphasized the particular tradition of interpreting the word "person" not to include states absent particular indication that Congress intended otherwise, that conclusion is part of the broader line of cases indicating that Congress should not be read to have intended to abrogate state sovereign immunity unless a "clear statement" has been made to that effect.  *See, e.g., Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 726 (2003).

Further, as a general matter, a claim brought against a state official in his or her official capacity is a claim against a state.  *Graham*, 473 U.S. at 167.  Thus, as at least one court of appeals has explicitly held, official-capacity claims against state officials may not be brought under Section 3729(a).  *United States ex rel. Gaudineer & Comito, L.L.P. v. Iowa*, 269 F.3d 932 (8th Cir. 2001).  The parties do not dispute that ASU is an instrumentality of the state of Alabama, or that the Defendants qualify as state officials.

In response, Mr. Bell points out that subsection 3730(h), under which he is proceeding, does not contain the word "person," but rather appears to leave unspecified who may be made a defendant.[5]  While the court agrees that subsection 3730(h) does not itself

---

[5] In full, subsection 3730(h)(1) provides: "Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or

contain the word "person," that does not end the inquiry, because the standard for interpreting a statute to contain a congressional waiver of state sovereign immunity remains a high one.  A federal statute should be read to allow suits against states "only by clearly expressing such an intent."  *Stevens*, 529 U.S. at 780.  The principle is an ancient one.  "The most general words that can be devised (for example, any person or persons, bodies politic or corporate) affect not him [the sovereign] in the least, if they may tend to restrain or diminish any of his rights and interests."  *Dollar Sav. Bank v. United States*, 86 U.S. 227, 239 (1873).

Multiple federal courts have concluded that subsection 3730(h) does not reflect the requisite congressional intent to waive state sovereign immunity, although they spoke before the 2009 amendment to subsection 3730(h).  For example, a district court examining the pre-amendment version of subsection 3730(h), which contained the word "employer," determined that, like "person," "employer" should not be read to include states without a clear indication that Congress so intended.  *Elizondo v. Univ. of Tex. at San Antonio*, No.

---

agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, or agent on behalf of the employee, contractor, or agent or associated others in furtherance of other efforts to stop 1 or more violations of this subchapter."  31 U.S.C.A. § 3730(h) (2009).  Subsection 3730(h)(2) provides remedies for violations of (h)(1).

Mr. Bell argues that the recent amendment to this subsection, which was effective May 20, 2009, illustrates an intent by Congress to broaden its reach.  While this may be true, the expansion of subsection 3730(h) was to include "contractor[s]" and "agent[s]," while it had previously included only "employee[s]."  *See* Pub. L. 111-21, § 4(d), 123 Stat. 1624 (2009).  It also eliminated language referring to potential defendants as "employers," leaving the body of potential defendants in a subsection 3730(h) action undefined.  These changes broaden the statute in some respects, but do not add a "clear statement" of congressional intent to waive state sovereign immunity.

CIVICASA-04-CA0-1025-XR, 2005 WL 823353, at * 4-5 (W.D. Tex. April 7, 2005). The only court of appeals to have answered the question found that state sovereign immunity bars subsection 3730(h) claims against states, simply on the basis that there was no clear statement that they were permitted. *United States v. Tex. Tech. Univ.*, 171 F.3d 279, 294 (5th Cir. 1999); *see also United States ex rel. Moore v. Univ. of Mich.*, 860 F. Supp. 400, 402 (E.D. Mich. 1994) (reaching the same conclusion, on the basis of the clear statement rule).

While *Elizondo* and the other cases are no longer on all fours with this one, given the 2009 amendment removing the word "employer" from the statute, they retain substantial force. The requirement of a clear statutory statement of congressional intent to waive state sovereign immunity is no more met by silence as to who may be made a defendant than it is by a word such as "employer," which, read literally, would include states and their agencies. It is hard to imagine a more "general" statutory scheme than one simply stating that certain persons are entitled to relief, without making any specification about who may be sued to obtain that relief.

Mr. Bell's general assertion that the amendment was intended to broaden the statute cannot overcome the requirement for a clear statement that Congress meant to override states' sovereign immunity by permitting subsection 3730(h) suits against official-capacity defendants. The official-capacity claims for damages are barred by the doctrine of state sovereign immunity. Accordingly, the motion to dismiss with respect to the official-capacity claims (except those for injunctive relief) is due to be granted.

8

### B.  Remaining Claims

Earlier, the court observed an apparent internal tension in Mr. Bell's Complaint – an overview paragraph states that Defendants actually "instructed" him to use funds improperly, while later, a paragraph in the "Facts" section of the Complaint alleges only that Defendants "expressed a desire" to use the funds for a non-Title III purpose, and Mr. Bell informed them that such a usage was impermissible.  In other words, it is unclear whether Mr. Bell alleges that Defendants intentionally disregarded Title III requirements, or simply that they expressed a desire to use the funds impermissibly.  (*Compare* Doc. # 1, ¶ 2 *with* Doc. # 1, ¶¶ 13-14.) Because this distinction may be relevant to determining whether Mr. Bell acted "in furtherance of other efforts to stop 1 or more violations of this subchapter," 31 U.S.C. § 3730(h), he is required to make a more definite statement of his claim to clarify the apparent discrepancy.

Next, the court directs further briefing as to the nexus between a "false claim" and the retaliation alleged in the Complaint.  The court is aware that a retaliation claim under subsection 3730(h) need not involve a completed violation of the False Claims Act, but it must at least concern efforts to stop "violations" of the FCA.  As the standard, now arguably superseded, concerning the former language of subsection 3730(h) put it, a plaintiff must allege that FCA litigation was a "distinct possibility" when he was fired.  *United States ex rel. Sanchez v. Lymphatx*, 596 F.3d 1300, 1303 (11th Cir. 2010).  While this standard may be outdated, the recency of the amendments to the FCA leaves the court with little guidance

as to how, if at all, the "distinct possibility" standard should be modified.

A violation of the FCA cannot be based on the mere *misuse* of federal funds, but requires some nexus to a false *claim* made to the United States.  *See United States v. R&F Props. of Lake County, Inc.*, 433 F.3d 1349, 1355 (11th Cir. 2005) (setting out the elements of an FCA violation).  Here, the Complaint does not allege that the original Title III grant application was itself false, but rather that a question subsequently arose as to how to use the funds acquired under it.  Conceivably, an implication arises that some future reporting of how the funds were used would be required, which might well lead to falsification to cover up the misuse of the funds.  However, this is far from explicit in the Complaint. Accordingly, the parties are directed to provide further briefing on how close the nexus between a false claim and the adverse employment action must be to meet the terms of the statute as currently written; that is, what is required to be alleged, in the context of this case, for an employee's conduct to have been "in furtherance of other efforts to stop" FCA violations, as opposed to stopping the simple misuse of federal funds.  Of course, Mr. Bell is also free to move for leave to amend his Complaint to add clarity to the issue by asserting a connection to some particular false claim.

## IV. CONCLUSION

For the foregoing reasons, it is ORDERED that the motion to dismiss (Doc. # 13) is GRANTED in part, and the official-capacity claims for money damages are DISMISSED with prejudice.  It is further ORDERED that the motion to dismiss is partially construed as

a motion for a more definite statement, and as such is GRANTED as set forth above, and a more definite statement is due on or before **May 17, 2010**.  It is further ORDERED that the parties provide further briefing as directed above, with Mr. Bell's brief due on or before **May 17, 2010**, and a response from Defendants due on or before **June 1, 2010**.

DONE this 4th day of May, 2010.

/s/ W.  Keith Watkins
UNITED STATES DISTRICT JUDGE

11