IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MARCUS BELL, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | CASE NO. 2:09-CV-1082-WKW [WO] |
| ) | |
| ELTON DEAN, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Previously, the court granted Defendants' Motion to Dismiss in part, permitted Mr. Bell to amend his Complaint, and ordered additional briefing concerning what is required to state a claim under the retaliation provision of the False Claims Act ("FCA"), as amended in 2009. (Doc. # 26.) Mr. Bell filed an Amended Complaint (Doc. # 27), and the parties submitted the required briefing. (Doc. # 27, Attach. 1; Doc. # 28.) Rather than rehashing the factual and procedural history provided in the earlier opinion, the court will limit the discussion to whether the Amended Complaint states a claim, and, if so, addressing the issue of qualified immunity.

**I. DISCUSSION**

**A. Stating a Claim**

As Mr. Bell notes, the revised language of the FCA retaliation provision requires only that protected behavior have been done "in furtherance of other efforts to stop 1 or more violations of this subchapter." 31 U.S.C.A. § 3730(h) (2009). No nexus to actual or threatened litigation is required, in contrast to the former version of the statute, which

measured a retaliation claim by the likelihood of a substantive FCA suit being brought.  In his Amended Complaint, Mr. Bell alleges that he, in his position as Director of Title III Programs at Alabama State University ("ASU"), filed a grant application with the U.S. Department of Education seeking the award of Title III funds for the 2008-2009 fiscal year. (Doc. # 27, ¶ 11.)  After such funds had been received, Defendants pressured Mr. Bell to apply the grant funds to specific projects that were not mentioned in the grant application and would not be legitimate uses of Title III funds.  (Doc. # 27, ¶¶ 12-14.)  Mr. Bell informed Defendants that their proposed uses were "not lawful," and that he would report any such misuses to the Department of Education and request an audit.  (Doc. # 27, ¶ 15.) Significantly, the Amended Complaint explains that a document called a "Revised Activity to Expand Carry-Over Money" would have to be filed with the Department of Education in order obtain authorization for the use of Title III funds for purposes other than those mentioned in the original application.  (Doc. # 27, ¶ 14.)  At one meeting, Mr. Bell was shown such a document, with entries requesting that funds be "carried over" for two projects that he did not believe qualified for Title III funding, because they involved renovations to non-instructional buildings.  (Doc. # 27, ¶ 17.)

    Mr. Bell does not allege that this document was ever actually submitted to the Department of Education, but he need not do so in order to state a claim under the retaliation provision of the FCA.  It does not require extensive analysis to conclude that Mr. Bell's Amended Complaint states a claim under the retaliation provision.  His explicit threats to

report what he viewed as unauthorized uses of funds, coupled with documents that would likely constitute false claims if they were submitted to the Government, indicate that his alleged actions were undertaken "in furtherance of other efforts to stop 1 or more violations of" the FCA. § 3730(h). The allegations are sufficient to state a claim that Mr. Bell's "efforts" were thus "in furtherance" of stopping violations of the FCA, in that he sought to prevent the possible filing of false "carry over" applications to the Department of Education. Potentially, his efforts to stop the misuse of funds could also be viewed as an effort to prevent a violation of the terms of the original grant application, although the court notes that Mr. Bell has not alleged that Defendants intended any falsity or fraud when the original Title III application was filed. Nonetheless, as the court discussed in its earlier opinion, "false certifications" that grant monies were used for their proper purpose may constitute false claims, and, even if no such false certifications were actually filed, Mr. Bell's efforts may nonetheless have been in furtherance of efforts to stop them from being filed. (*See* Doc. # 27, Attach. 1, at 6 (arguing that such future false certifications were likely if misuse of funds occurred).)

Further, Mr. Bell points out that it is possible to violate the FCA without the actual making of a claim, if an entity " . . . knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." § 3729(a)(1)(G). Because ASU would have been required to repay any grant monies not used for their originally authorized purpose, the knowing use of the funds for improper

purposes would constitute a violation of this subsection as well.  Mr. Bell's efforts would allegedly be in furtherance of efforts to stop such a violation, all potential false claims aside.

Defendants' response seems to be that because Mr. Bell has not alleged that any false claim was actually made, or would certainly have been made absent his intervention, he can state no claim for retaliation.  (Doc. # 28, at 4.)  But that was not the law even before the 2009 amendment, and it is plainly not the law now.  Moreover, Mr. Bell has now alleged the existence of actual documents (the carry-over applications) drafted by at least some Defendants and proposed for submission to the Government, that would, taking the facts in the light most favorable to Mr. Bell, have constituted false claims under the "false certification" theory.  Defendants do not respond to the argument concerning § 3729(a)(1)(G).  Accordingly, Mr. Bell has stated a claim for a violation of the revised version of subsection 3730(h).

### B. Qualified Immunity

In their motion to dismiss, Defendants contend that because they are state officials, they are entitled to qualified immunity from Mr. Bell's claims when sued in their individual capacities.  The court has not discovered any Eleventh Circuit case law on the issue whether qualified immunity applies to a False Claims Act retaliation suit.  The court recognizes that, in general, qualified immunity applies to both statutory and constitutional claims against state officials.  *See Penley v. Eslinger*, 605 F.3d 843, 849 (11th Cir. 2010).  But, in the only appellate decision to have addressed the issue head-on, the Fifth Circuit held that qualified

immunity does not apply to FCA retaliation claims. *Samuel v. Holmes*, 138 F.3d 173, 178 (5th Cir. 1998). That court found that "qualified immunity seems particularly ill-suited in [the FCA] context, given the goals of the FCA" of discouraging fraud and abuse. *Id*. Defendants offer no rejoinder to *Samuel* in their reply brief. (Doc. # 19, at 5-6.) The court finds the Fifth Circuit's opinion in *Samuel* persuasive and chooses to follow it. While qualified immunity is an understandable doctrine when applied to the split-second decisions of law enforcement officers in the field, it is difficult to discern what purpose it would serve to permit retaliation against whistleblowers by public employers on the basis that the law was not "clearly established" as to what constituted protected conduct. Such retaliation, if sufficient to actually violate the statute, has no conceivably legitimate purpose, and applying the judicially created doctrine of qualified immunity to bar it would seem at odds with the purpose of the FCA, and specifically with the purpose of the retaliation provision, as recently expanded by Congress.[1] Accordingly, the court finds at this stage that qualified immunity is not available as a defense to Defendants in their individual capacities.

### III. CONCLUSION

For the foregoing reasons, it is ORDERED that the motion to dismiss (Doc. # 13) is

---

[1] The Eleventh Circuit has twice cited *Samuel* as an example of a case in which qualified immunity was not available to public officials, both times in cases holding that qualified immunity was available under other statutes. *See Tapley v. Collins*, 211 F.3d 1210, 1215 n.9 (11th Cir. 2000) (Wiretap Act)*; Gonzalez v. Lee County Housing Auth.*, 161 F.3d 1290, 1300 n.34 (11th Cir. 1998) (Fair Housing Act retaliation provision). Neither case, however, indicated express disagreement with *Samuel*, and in *Gonzalez*, the court emphasized that its "opinion in this case should not be construed to address whether qualified immunity is available in actions brought under statutes other than [the one at issue in that case]." 161 F.3d at 1300 n.34.

DENIED as to the official-capacity claims for injunctive relief, and as to Defendants in their individual capacities.  Previously, the court granted the motion to dismiss claims for money damages Defendants in their official capacities.  (Doc. # 26.)  On the whole, then, the motion to dismiss (Doc. # 13) has been GRANTED in part and DENIED in part.

DONE this 27th day of July, 2010.

/s/ W.  Keith Watkins
UNITED STATES DISTRICT JUDGE